## CITY OF ST. PAUL v. GREAT NORTHERN RAILWAY COMPANY.[1]

### July 13, 1917.

### Nos. 20,472—(249).

**Railway — maintenance of bridge adequate for all traffic.**

> It is the uncompensated duty of a commercial railroad which intersects a public street to construct and maintain a bridge over its tracks when reasonable public necessity and safety demand. The use of a street for street railway traffic is a public use in aid of public travel. When the use of such street for a street railway line becomes an appropriate use of the street, though it was not so used at the time the bridge was constructed, it is the uncompensated duty of the railroad to strengthen it, if this be necessary, to make it fit for such use. It does not discharge its duty by maintaining a bridge adequate for passenger and vehicle traffic, and for all traffic except street railway traffic, when the use of the street for street railway traffic becomes an appropriate and needed use.

Action in the district court for Ramsey county to recover $13,047.38 expended in strengthening a bridge over defendant's tracks. The answer,

[1]Reported in 163 N. W. 788.

among other matters, alleged that the city of St. Paul entered into an agreement with the street car company part of which reads as follows: "And provided further that the bridge over the railroad tracks of the Great Northern Railway Company on said Dale street be strengthened by said city of St. Paul sufficiently so as to carry safely the cars of said St. Paul City Railway Company;" and further alleged that said agreement on the part of the city of St. Paul was illegal and beyond its charter power, it being then and there the duty of said city of St. Paul to require the said St. Paul City Railway Company at its own cost and expense to strengthen said Dale street bridge to whatever extent was necessary to carry safely its street cars thereover. The case was tried before Orr, J., who made findings and ordered judgment for $2,655.28. From that part of the judgment which adjudged plaintiff not entitled to recover any amount whatever for moneys expended by it in strengthening Dale street bridge, for the purpose of fitting the same for street car traffic, plaintiff appealed. Reversed.

O. H. O'Neill and J. P. Kyle, for appellant.

M. L. Countryman, for respondent.

DIBELL, C.

This is an action to recover the amount expended by the plaintiff city in strengthening a bridge which passes over the defendant's railroad. The case was tried to the court without a jury. There were findings and judgment for the plaintiff in the sum of $2,655.28 and interest. The plaintiff appeals from the judgment.

The facts are undisputed. In brief they are these: Dale street, a public thoroughfare of St. Paul, and the right of way of the defendant Great Northern Railway Company intersect. In 1890 the defendant constructed a bridge on this street over its tracks at the intersection and has since maintained it. The St. Paul City Railway Company has a franchise from the city to operate upon the streets, and under it the city has the power to require it to extend its lines. On December 4, 1913, the city by ordinance directed the company to extend and operate its street railway on Dale street between points on each side of the bridge provided the bridge was sufficiently strengthened by the city. On May 2, 1914, the city, by an ordinance finding and declaring the public necessity, ordered

the defendant to strengthen the Dale street bridge in accordance with certain plans and specifications so as to permit the street railway line to use it with safety. No question is made of the propriety or effect of the ordinance requiring the street railway company to operate its line on Dale, nor of the necessity of strengthening the bridge for its use. The defendant refused to comply with the ordinance. The city then strengthened the bridge at the reasonable cost of $13,047.38. Of this sum $9,507 was expended in strengthening the bridge for street railway use and $2,655.28 was expended in work which the defendant concededly should have done. The court found the defendant liable for the item of $2,655.28, and not liable for the item of $9,507, and judgment was entered for $2,655.28 and interest. The plaintiff claims that it should have recovered both items and that is the question.

Whether through legislative delegation St. Paul has power in an appropriate case to compel a railway company to bridge a street at a street and railway intersection is a question of state law. Atlantic C. L. R. v. City of Goldsboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. ed. 721. That it has such power is unquestioned. State v. Chicago, M. & St. P. Ry. Co. 122 Minn. 280, 142 N. W. 312. Nor is it questioned that a municipality with properly delegated police power in an appropriate case may compel railroads to construct overhead or other crossings at their own expense. Northern Pac. Ry. Co. v. Minnesota, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. ed. 630; Cincinnati, I. & W. Ry. Co. v. City of Connersville, 218 U. S. 336, 31 Sup. Ct. 93, 54 L. ed. 1060, 20 Ann. Cas. 1206; Chicago, M. & St. P. Ry. Co. v. City of Minneapolis, 232 U. S. 430, 34 Sup. Ct. 400, 58 L. ed. 671; Atlantic C. L. R. Co. v. City of Goldboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. ed. 721. The state cases are to that effect. State v. Great Northern Ry. Co. 134 Minn. 249, 158 N. W. 972; State v. Great Northern Ry. Co. 130 Minn. 480, 153 N. W. 879; State v. Chicago, M. & St. P. Ry. Co. 122 Minn. 280, 142 N. W. 312; Twin City S. Co. v. Chicago, M. & St. P. Ry. Co. 118 Minn. 491, 137 N. W. 193; Chicago, M. & St. P. Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169, 51 L. R. A. (N. S.) 236, Ann. Cas. 1912D, 1029; State v. Northern Pac. Ry. Co. 98 Minn. 429, 108 N. W. 269; State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261; State v. Minnesota Tran. Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656; State v. St. Paul & D. R. 75 Minn. 473, .

78 N. W. 87; State v. Minneapolis & St. L. Ry. Co. 39 Minn. 219, 39 N. W. 153; State v. St. Paul, M. & M. Ry. Co. 38 Minn. 246, 36 N. W. 870; State v. St. Paul, M. & M. Ry. Co. 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313. The duty resting upon the railway is a continuing one, exists though the character of public travel and the demands of public necessity and safety change, and the police power residing in the municipality cannot be abridged, nor surrendered nor bargained away. Northern Pac. Ry. Co. v. City of Duluth, 208 U. S. 583, 23 Sup. Ct. 341, 52 L. ed. 630; State v. Minnesota Tran. Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656; State v. Great Northern Ry. Co. 134 Minn. 249, 158 N. W. 972; State v. Chicago, M. & St. P. Ry. Co. 135 Minn. 277, 160 N. W. 773, and cases.

The defendant relies largely upon the following: Carolina Cent. R. Co. v. Wilmington St. Ry. Co. 120 N. C. 520, 26 S. E. 913; Briden v. New York, N. H. & H. R. Co. 27 R. I. 569, 65 Atl. 315; People v. Adams, 88 Hun, 122, 34 N. Y. Supp. 579, affirmed without opinion in 147 N. Y. 722, 42 N. E. 725; Conshohocken Ry. Co. v. Pennsylvania R. Co. 15 Pa. Co. Ct. 445. We have examined them. While some distinctions between them or most of them and the case before us may be drawn, and are suggested in the plaintiff's brief, they directly or indirectly support the defendant's contention and we have found them helpful. They are on the theory that when an existing railway bridge is adequate for ordinary foot and vehicle traffic a requirement that the railway strengthen it to meet the necessities of street car traffic is the imposition of an additional burden which it cannot be required to bear without compensation. In this view we do not concur.

The use of a street for street railway purposes is a proper street use. It is in aid of and facilitates public travel. It is a mode of using the street by the public and such use does not impose an additional servitude upon abutting property. Carli v. Stillwater St. Ry. & T. Co. 28 Minn. 373, 10 N. W. 205, 41 Am. Rep. 290; Newell v. Minneapolis, L. & M. Ry. Co. 35 Minn. 112, 27 N. W. 839, 59 Am. Rep. 303; Elfelt v. Stillwater St. Ry. Co. 53 Minn. 68, 55 N. W. 116. A bridge is a part of the street. Willis v. Winona City, 59 Minn. 27, 60 N. W. 814, 26 L. R. A. 142. The railway company crossing the highway is bound to restore it as near as may be to its former condition of usefulness and

to keep it so. "The duty rested upon the defendant corporation when it occupied the avenue with its tracks, to restore the same, by some reasonably safe and convenient means, to its former condition of usefulness. And this duty was a continuing one." State v. Minn. Trans. Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656. In State v. St. Paul, M. & M. Ry. Co. 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313, Justice Mitchell, in speaking of the duty cast upon the defendant railroad by a particular statute, said:

"The legislature never intended to fix or limit the duty of the company by the necessities of the public at any one time, or under any particular state of circumstances. They intended to impose upon the company the duty, from time to time, of putting the street in such condition and state of repair as changed circumstances—such as the increased travel on the street, or increased traffic on the railroad—might render necessary to its free and proper use."

Neither is the common-law obligation fixed as of the date when it arises and discharged by what is then done in its performance. In Chicago, B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. ed. 596, 4 Ann. Cas. 1175, it was held that a railway company was properly required to remove an old bridge, adequate for the flow of water at the time it was constructed but inadequate later because of increased drainage, and construct a new one. A railway may be required to construct a new bridge or repair or replace an old one. What it may be required to do is measured by reasonable public necessity and safety. It must care for an added use or a changed use if it is a reasonable public travel use. The principle upon which its liability rests is clear. Its tracks interrupt street uses. It must restore the street to a condition of usefulness for public travel. A street railway affords one mode of public travel. The railway must make the street which it has disturbed fit for such use whether such use was needed when the bridge was constructed or only becomes necessary afterwards. We do not find that the contention now made by the railway has been urged before in any of our numerous crossing cases, though many of the bridges required to be built carried street railway tracks.

The four cases cited and relied upon by the defendant were before the court, and cited in the dissenting opinion, in Missouri Pac. Ry. Co.

v. City of Omaha, 197 Fed. 516, 117 C. C. A. 12, which was affirmed in Missouri Pac. Ry. Co. v. City of Omaha, 235 U. S. 121, 129, 130, 35 Sup. Ct. 82, 59 L. ed. 157. That action was to enjoin the city of Omaha from requiring the plaintiff railway company by an ordinance which it had enacted to construct a viaduct over a street according to plans and specifications contemplating its use for street railway traffic and requiring an expenditure of $80,000 while a viaduct costing $30,000 was adequate for all other traffic. In holding the ordinance a valid exercise of the police power the Supreme Court said:

"It may be that it would be more fair and equitable to require the street railway company to share in the expense of the viaduct, and if the municipality had been authorized so to do by competent authority, it would have been a constitutional exercise of the police power to have made such division of expenses. Detroit, etc. Railway v. Osborn, 189 U. S. 383, 389 [23 Sup. Ct. 540, 47 L. ed. 860]. But there is nothing in the statute requiring the municipality to divide the expense of such improvement among those responsible for the dangerous condition of the street crossing. Where a number of railroads have contributed to the condition which necessitates such improvement in the interest of public safety, it is not an unconstitutional exercise of authority, as this court has held, to require one of the companies interested to perform such work at its own expense. Chicago, etc. Railroad Company v. Nebraska, 170 U. S. 57, 76 [18 Sup. Ct. 513, 42 L. ed. 948]. The broad authority to require any railroad company to make such improvement, in the interest of public safety, is conferred by the legislature upon the city. The safety of the traveling public is the primary consideration, and this is accomplished by the construction of the viaduct which is used by many people who travel across the viaduct every day. The public when being transported by the street railway company was exposed to the dangers of a grade crossing, which it was within the authority of the state to authorize the municipality to discontinue. Under competent legislation the city has undertaken to do this. In placing the expense entirely upon the railroad company, whose locomotives and trains are principally responsible for the resulting danger to the public, we do not find such abuse of the recognized authority of the state as has justified the courts in some cases in enjoining the enforcement of state and municipal legislation."

This case recognizes the power of the city to compel a railroad to maintain at its own expense a bridge fit to carry street railway traffic. We apply and follow it.

So far as we are advised the city was without authority to compel the street railway to strengthen the bridge to make it safe for its use. The city was compelling the street railway to extend its lines and so far as the record shows it was the duty of the city to furnish an adequate street. We do not say that in the exercise of the police power a city might not require a street railway to keep the space occupied by its tracks in condition and repair and to relieve the city of the burden. Such question is not before us. It is not important that in the ordinance directing the street railway to extend its line there was a proviso to the effect that the city would strengthen the Dale street bridge. This was between the city and the street railway company. It is not correct to say that by the subsequent ordinance requiring the defendant to stregthen the bridge the city sought to shift the burden to the defendant. It was never upon the street railway, nor upon the city except as a condition to the street railway extending its line. If the duty rested upon the defendant the city could not waive or surrender it by an arrangement with the street railway or even by a contract with the defendant.

There should be judgment for the plaintiff for $12,162.28 with interest. Judgment reversed.