# STATE EX REL. CITY OF FAIRMONT v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

January 14, 1921.

No. 22,110.

**City may compel railroad to pave grade crossing.**
   1. When public welfare, convenience or safety requires a city street crossing a railroad right of way to be paved, and the city council so determines, the city may, in the exercise of its police power, compel the railroad to pave the crossing at its own cost.

**Exercise of city's police power over grade crossings unlimited by statute.**
   2. The legislature has not limited the exercise of the police power, granted a city, to make its public streets safe and convenient for travel across railroad grade crossings, either by sections 4256, 4257, G. S. 1913, or by any other statute.

**No arbitrary exercise of power.**
   3. The city did not exercise its power arbitrarily or oppressively in this instance.

**Findings sustained by evidence.**
   4. The findings are supported by the evidence.

Upon the relation of the city of Fairmont, the district court for Martin county granted its alternative writ of mandamus directed to the Chicago, St. Paul, Minneapolis & Omaha Railway Company requiring it to pave a grade crossing in that city. The matter was heard by Dean, J., who made findings and ordered a peremptory writ to issue. From

[1] Reported in 180 N. W. 925.

an order denying its motion to amend the findings and conclusions of law, the railroad company appealed. Affirmed.

*Richard L. Kennedy* and *Donald Evans,* for appellant.

*J. E. Haycraft,* City Attorney, and *Haycraft & McCune,* for respondent.

HOLT, J.

Defendant, a railroad corporation, appeals from a judgment in mandamus compelling it to pave a grade crossing in the city of Fairmont.

There is no dispute as to the facts. The city is under a home rule charter. One of its principal streets is First street running east and west. Some four blocks west of the easterly city limits, defendant's right of way crosses the street on grade and at right angles. The ground slopes slightly towards the right of way. First street is one of the two main inlets and outlets of the city traffic. Because of the lay of the land and the quality of the soil, the street across the right of way becomes almost impassable in wet weather, so that teams and vehicles frequently mire and stall therein. Defendant now maintains two tracks, 20 feet apart, along its right of way which is 224½ feet wide at the street intersection. The city has paved the street up to the right of way on both sides with what is known as a bitulithic pavement. The city council determined that public welfare, convenience and safety required the crossing to be paved, and, by resolution duly adopted, directed defendant so to do within a stated time. It refused, and this proceeding resulted. The court's finding as to the necessity of the paving coincided with the determination of the city council, and judgment was entered requiring defendant to pave its right of way across the street to a width of 26 feet with bitulithic or an equally good and serviceable paving material.

Defendant pays a gross earnings tax, and is exempt from all taxes and assessments on its property devoted to railway use. Patterson v. Chicago, R. I. & Pac. Ry. Co. 99 Minn. 454, 109 N. W. 993. Hence, unless it is within the police power of the municipality to place this uncompensated burden of paving upon defendant for the public welfare, convenience or safety, it cannot be compelled to pave the crossing. It was held in State v. Great North. Ry. Co. 130 Minn. 480, 153 N. W. 879, L.R.A. 1918D, 1153, affirmed in 246 U. S. 434, 38 Sup. Ct. 346, 62 L. ed. 817,

that the legislature could so do as to a sidewalk across the right of way. There can be no difference except in degree between a sidewalk and a pavement serving public welfare, convenience and safety upon a street across a railroad right of way. It is also thoroughly settled since State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. 581, 8 Ann. Cas. 1047, affirmed in 214 U. S. 497, 29 Sup. Ct. 698, 53 L. ed. 1060, and State v. Northern Pac. Ry. Co. 98 Minn. 429, 108 N. W. 269, affirmed in 208 U. S. 583, 28 Sup. Ct. 341, 52 L. ed. 630, that it is the uncompensated duty of a railroad to carry a street over or under its right of way and make it fit for travel, and that the municipality wherein the crossing exists has authority to require the railroad to perform this duty. It is not enough that a foundation for a roadway is furnished. The police power of the municipality goes to the extent of compelling the railroad to maintain a surface thereon suitable for convenient travel. City of St. Paul v. Great Northern Ry. Co. 145 Minn. 355, 177 N. W. 492.

In Chicago, M. & St. P. Ry. Co. v. Village of Le Roy, 124 Minn. 107, 144 N. W. 464, it was held that, where the village laid out a street across a railroad right of way, the railroad company could not claim as damages the cost of sidewalks and culverts, matters pertaining to a safe and convenient grade crossing. It is said that the condition of the soil in the street and not the presence of the railroad tracks calls for the paving, and hence the case is ruled by State v. St. Paul, M. & M. Ry. Co. 62 Minn. 450, 64 N. W. 1140. The statement in that case, relied on by defendant, must be considered in connection with the facts there present and the findings of the court therein. The railroad right of way was at the bottom of a ravine, some 30 or 40 feet below the surface of the streets which the bridge was to span, and for the building of which it was sought to hold the company, and the court found that the necessity or expediency for bridging the ravine was in no manner enhanced or affected by the occupancy of its bottom by the railroad tracks.

Of course, here the parts of the street outside defendant's right of way needed paving as well as the right of way, but, at the same time, the

presence of its tracks thereon made it imperative that the roadway over the crossing should be more safe and convenient for teams and vehicles than the balance of the street, for the danger of collision with trains was there to be apprehended. Indeed, we think the necessity and expediency of a convenient and safe street surface for travel are always enhanced by the presence of railroad tracks at a grade crossing. It is true that defendant holds its right of way across the street subject to the public easement, and perhaps could not object if the city itself undertook to pave the crossing. But, being a right of way belonging to defendant, it could at any time, as traffic needs demand, change the tracks thereon or add more, and one kind of pavement might be more desirable than others in meeting such changes in the right of way. It would therefore seem to be the reasonable thing to leave the paving of the crossing to the railroad. The proposition appears to have been considered and foreclosed against defendant in State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047, wherein it was said that "there can be no difference on principle, in so far as an exercise of police power is concerned, between a grade crossing and a bridge over the tracks." Nor is this power to be limited to providing safety devices alone; it is concerned also with the convenience and welfare of the public. Chicago, M. & St. P. Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169, 51 L.R.A.(N.S.) 236, Ann. Cas. 1912D, 1029. We hold that the police power of the state may be invoked to compel a railroad to pave a grade crossing as readily and lawfully as it may be invoked to compel it to pave or repave a street carried over its right of way by a bridge.

Defendant places reliance upon People v. Illinois Cent. R. Co. 235 Ill. 374, 85 N. E. 606, 18 L.R.A.(N.S.) 915. The court there construed a statute and a charter provision of the railroad, and reached the conclusion that the burden did not continue to rest upon a railroad to keep in repair the paving and sidewalk upon a street that had been depressed when the grades were separated, even though the railroad had been made to bear the cost of the depression, the pavement, and the sidewalk when the change was made. We may say of that decision what

therein is said of State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047, viz.: "We do not regard that case as determining the questions involved in this case."

We do not sustain defendant's claim that the legislature by sections 4256, 4257, G. S. 1913, limited the authority of municipalities in the exercise of the police power possessed by them to make railroad grade crossings convenient and safe for the public. The sections referred to relate particularly to planking the tracks so as to cover the ties and to planking between tracks when they are no farther than 15 feet apart, also to maintain a safe grade over the right of way. It must be held that these sections establish the minimum requirements which railroads must provide, even where there is no municipality with power or inclination to act in the interest of public convenience or safety, and that they were not designed to abridge the usual powers delegated to cities. Nor do we think that cities, such as Fairmont, lack authority to make railroad crossings over streets safe and convenient for public travel. To a city of that class the legislature has committed the care of its public streets, and to its city council or legislative body falls the duty of determining when and where public necessity and convenience require pavement upon a street. In our judgment, no attempt has been made by the legislature in the sections referred to, or in any other statute, to limit the authority of municipalities on the subject. To be sure, the Clara City case[1] was predicated on said section 4256, but the other cases above referred to from Duluth, Minneapolis and St. Paul were based upon the police power possessed by the municipalities apart from any special statute relating to railroad crossings.

Of course the police power with reference to this subject, as well as to others coming within its application, may not be exercised arbitrarily or oppressively. Nor can we say that it was exercised contrary to this rule in this instance. First street is paved on both sides of the right of way. The travel is heavy. There are two tracks to cross. Industries served by the railroad situated along the east side of the right of way and north of this street, depend on this crossing for access to the business part of the city. Defendant is only required to pave a moderate-

[1][130 Minn. 480, 153 N. W. 879.]

ly wide driveway, with materials which it may deem best suited for its purposes so long as it is as good and serviceable as the pavement laid by the city abutting the right of way, and which pavement is of a medium price.

Error is assigned upon many of the findings, but no effort has been made to point out wherein they are not sustained by the evidence, except as to the controlling finding that public welfare, convenience and safety require the crossing to be paved, and as to that finding we deem it sustained.

We think the judgment should be and it is affirmed.